UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD K. JONES,

                Plaintiff,

      -v-                                                    1:24-CV-947-JLS-HKS

MIDLAND FUNDING LLC D/B/A IN NEW
YORK AS MIDLAND FUNDING OF DELAWARE
LLC, STEPHEN EINSTEIN & ASSOCIATES,
P.C., TROMBERG, MORRIS & POULIN, PLLC,

                Defendants.

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #18.

Plaintiff Richard K. Jones, proceeding *pro se*, brings this action alleging claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), New York General Business Law § 349 ("GBL"), and for malicious prosecution. Dkt. #1, pp. 3-4.

Currently before the Court are defendants' motions to dismiss. Dkt. ##19, 35.

## **BACKGROUND**

Defendant Midland Funding LLC DBA in New York as Midland Funding of Delaware LLC ("Midland") is a business that purchases and collects consumer debts. Dkt. #1, ¶ 5. Defendants Stephen Einstein & Associates, P.C. ("Einstein") and Tromberg, Morris & Poulin, PLLC ("Tromberg") are law firms retained by Midland to collect consumer debts. Dkt. #1, ¶¶ 6-7.

On or about January 4, 2010, Einstein, representing Midland, filed a collection action against plaintiff in the City Court of the City of Buffalo, County of Erie. Dkt. #1, p. 8. The action was to collect a debt on a Citibank, N.A. ("Citibank") credit card, on which plaintiff had allegedly defaulted. Dkt. #1, ¶¶ 9-10; Dkt. #1, p. 6. Citibank had sold the debt to Midland on or about May 28, 2009, at which time the unpaid balance was $1,028.69. Dkt. #1, ¶ 10; Dkt. #1, p. 6.

Plaintiff was served in the collection action on January 26, 2010, and, on May 26, 2010, Midland obtained a default judgment against him in the amount of $1,410.35. Dkt. #1, ¶ 9; Dkt. #1, pp. 7-9. Plaintiff alleges that defendants did not report that judgment to credit reporting agencies. Dkt. #1, ¶ 13.

Subsequently, Tromberg initiated wage garnishment actions against plaintiff, and plaintiff alleges the actions were improper because he had disputed the debt. Dkt. #1, ¶ 11; Dkt. #1, pp. 15-16.

> By letter dated September 22, 2023, Tromberg wrote to plaintiff:
>
> We are in receipt of your request for validation/substantiation of your debt under the Fair Debt Collection Practices Act ("FDCPA") and/or applicable law and we are responding accordingly. Enclosed please find documents validating/substantiating your debt.
>
> The balance due above is the amount we are seeking to collect, and includes any interest or other charges that may apply to this account as of the date of this letter. The balance may continue to increase due to costs and/or interest that may be awarded by a court in association with any future litigation, until the account is satisfied. Thus, the amount due on the day you pay may be greater than the amount above.

Dkt. #1, p. 19.

Documents attached to plaintiff's complaint in this matter reflect that he filed complaints with a variety of federal and state agencies against defendants and Citibank. Dkt. #1, pp. 21-56.

On August 6, 2024, Midland responded to a complaint plaintiff filed with the Consumer Financial Protection Bureau ("CFPB"). Dkt. #1, pp. 6-7. Midland recounted the history of its collection efforts as to the Citibank debt and noting, in part, that it had mailed plaintiff a validation letter when it acquired the debt using the same address that plaintiff had listed in his CFPB complaint; that the notice was not returned as undeliverable; and that Midland had thus satisfied the notification requirements of the FDCPA. *Id.*

Midland concluded, however, by stating that it had made the business decision to close the account associated with the Citibank debt, and that "[t]here will be no further collection activity or sale of this account." Dkt. #1, p. 7.

On August 9, 2024, Tromberg filed, on Midland's behalf, a Notice of Discontinuance and Vacatur of Judgment in the collection action. Dkt. #1, p. 18. Plaintiff alleges that defendants thereafter ceased any further collection efforts. Dkt. #1, ¶ 12.

Plaintiff filed this action, *pro se*, on October 3, 2024, naming as defendants Midland, Einstein, and Tromberg. Dkt. #1, pp. 1-2.[1] Midland has filed a motion to dismiss plaintiff's claims. Dkt. #19.[2]

## DISCUSSION AND ANALYSIS

### Motion to Dismiss

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Bella v. Wilton Reassurance Life of New York*, 23-CV-1613 (VSB), 2025 WL 1616851, at *3 (S.D.N.Y. June 5, 2025) (citations and internal quotation marks omitted). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Plaintiff also listed Midland Credit Management ("MCM") as a defendant, but he did not include that entity in the caption, and MCM has not been served.

[2] Einstein and Tromberg join in Midland's motion and adopt its arguments. Dkt. #35.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Id.* A complaint need not make detailed factual allegations, but it must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id.* Finally, although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions. *Id.*

"In making such determinations, the Court may consider documents attached to the complaint or incorporated by reference." *Cramer-Williams v. Doe*, 24-CV-6598-FPG, 2025 WL 1585142, at *1 (W.D.N.Y. June 5, 2025) (citation omitted).

Finally, the "Court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint to raise the strongest arguments they suggest." *Zulli v. JP Morgan Chase Bank*, 23-CV-3519 (JMA) (AYS), 2025 WL 2482300, at *5 (E.D.N.Y. Aug. 27, 2025) (citation and internal quotation marks omitted).

**Fair Debt Collection Practices Act**

The FDCPA "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Durden v. DNF Assocs. LLC*, 22-CV-799S(Sr), 2023 WL 2482638, at *2 (W.D.N.Y. Jan. 10, 2023) (citations and internal quotation marks

omitted), *report and recommendation adopted*, 2023 WL 2480961 (W.D.N.Y. Mar. 13, 2023).

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.*

To plausibly assert a claim under the FDCPA, a plaintiff must allege that: (1) he is a consumer who allegedly owes the debt, or a person who has been the object of efforts to collect a consumer debt; (2) that the defendant collecting the debt is a debt collector; and (3) that the defendant has engaged in an act or omission in violation of FDCPA requirements. *Id.*

### *Alleged Invalidity of the Debt*

Plaintiff's complaint alleges that defendants violated the FDCPA by "falsely representing the validity and status of the debt," and by attempting to collect "a debt they had no legal right to collect." Dkt. #1, ¶¶ 17-18 (citing 15 U.S.C. §§ 1692e, 1692f).

However, "[a]llegations that a plaintiff does not owe a debt do not, without more, plead sufficient facts to support a claim under the FDCPA because such statements set forth a legal conclusion, or at least a mixed allegation of law and fact, rather than a factual allegation." *Id.* at *3 (citations and internal quotation marks omitted). Courts thus

~ 6 ~

routinely find that allegations that the plaintiff did not owe the debt in question fail to state a plausible FDCPA claim. *Id. See also Hakobyan v. Midland Credit Mgmt., Inc.*, 22-cv-5609 (BMC), 2023 WL 8473947, at *2 (E.D.N.Y. Dec. 7, 2023) ("Rather, complaints like plaintiff's that simply allege a debt is 'not owed,' without providing any additional explanation as to why the debt is not owed, fail to state a plausible claim under the FDCPA."); *Johnson v. Hunter Warfield, Inc.*, No. 1:22-cv-00122, 2022 WL 1421815, at *3 (N.D.N.Y. May 5, 2022) ("Alleging that a plaintiff does not owe a debt, coupled with vague claims of an FDCPA violation, is insufficient to support a claim under the FDCPA.") (citations omitted); *Mohnkern v. Equifax Info. Servs., LLC*, 19-CV-6446L, 2021 WL 5239902, at *8 (W.D.N.Y. Nov. 10, 2021) (plaintiff's allegations that dispute the legal validity of the debt do not state a claim under the FDCPA).

"Moreover, absent factual allegations that defendant moved forward with [a] state court proceeding in the face of evidence that no such debt existed or that it lacked a legal basis to pursue it, plaintiff has not sufficiently plead a claim under either 15 U.S.C. § 1692e or 15 U.S.C. § 1692f." *Durden*, 2023 WL 2482638, at *3.

Plaintiff does not dispute this authority. Instead, he alleges that when he inquired with Citibank, they responded that they had no record of the account. Dkt. #1, ¶ 10. However, that allegation misrepresents the documents that plaintiff attached to his complaint. The letters to plaintiff from Citibank state that it could not locate an account in his name because he had not provided the account number, and that because there are many divisions within Citigroup, it was possible that the account was serviced within

another division. Dkt. #1, pp.10-11. Citibank thus requested that plaintiff provide the full account number. *Id.* [3]

Furthermore, as Midland points out, it was required to provide to the state court in the collection action proof of plaintiff's debt in order to obtain the default judgment that it was granted. *See Hersko v. Hersko*, 224 A.D.3d 810, 812 (N.Y. App. Div. 2d Dep't 2024) (noting that, to obtain a default judgment under New York law, plaintiff must submit proof of service of summons and complaint, *proof of the facts constituting the claim*, and proof of the defendant's default in answering or appearing") (citations omitted) (emphasis added).

Also, the fact that the default judgment against plaintiff in the collection action was later voluntarily vacated does not mean that defendants' collection efforts ran afoul of the FDCPA because a judgment "is presumptively valid until reversed or set aside." *All Terrain Props., Inc. v. Hoy*, 265 A.D.2d 87, 91 (N.Y. App. Div. 1st Dep't 2000) (citation omitted). *See, e.g., Lowe v. FBCS, Inc.*, No. 21-3307, 2023 WL 154970, at *4 (3d Cir. Jan. 11, 2023) (holding that defendant did not violate FDCPA by seeking to collect on a default judgment that was later vacated).

---

[3] Plaintiff alleges in his complaint that it was stated in the collection action that the credit card debt in question was on a Citibank Mastercard account ending in 4151. Dkt. #1, ¶ 9.

Plaintiff's allegation regarding the letter sent to him by Tromberg on September 22, 2023, Dkt. #1, ¶ 14, thus fails to state a claim because that collection effort preceded the vacatur of the judgment.

For these reasons, the Court concludes that plaintiff has failed to plead a plausible FDCPA claim.

### *Statute of Limitations*

Defendants also argue in the alternative that plaintiff's FDCPA claim must be dismissed because it is untimely. Dkt. #19-1, pp. 16-20.

Claims brought under the FDCPA have a one-year statute of limitations. *Zulli v. JP Morgan Chase Bank*, 23-CV-3519 (JMA) (AYS), 2025 WL 2482300, at *10 (E.D.N.Y. Aug. 27, 2025) (citing *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100-01 (2d Cir. 2015)). Furthermore, actions or communications upon which a FDCPA claim are based must be made "in connection with the collection of a debt." *Garrasi v. Selene Fin., LP*, 1:23-CV-1377 (AMN/DJS), 2024 WL 1639844, at *3 (N.D.N.Y. April 16, 2024).

This case was filed on October 3, 2024. Dkt. #1. Thus, the FDCPA claim is time-barred unless it is based on actions or communications on or after October 3, 2023 in connection with defendants' attempt to collect on the debt plaintiff allegedly owed to Citibank.

Plaintiff's complaint and its attachments show that: (1) defendants filed the collection action against plaintiff on January 4, 2010; (2) they obtained a default judgment against him on May 26, 2010; (3) they initiated wage garnishment actions against him in August 2023; and (4) Tromberg sent him a collection letter on September 22, 2023. Dkt. #1, ¶¶ 9, 11, 14; Dkt. #1, pp. 8-9, 15-16, 19-20.

Each of these actions occurred before October 3, 2023, and they thus cannot provide the basis for a timely FDCPA claim.

Finally, Midland's letter of August 9, 2024, responding to plaintiff's complaint to the CFPB, was not a communication "in connection with the collection of a debt." That is, the letter bears none of the hallmarks that the Second Circuit has identified as necessary to plausibly allege that a consumer could reasonably interpret a communication to be part of a debt collection effort: it did not demand payment; it did not direct plaintiff to mail payment to a specific address; it did not inform plaintiff that he had a deadline to dispute the debt; and it did not say it was an attempt to collect upon a debt. *See Garrasi*, 2024 WL 1639844, at *3-4 (discussing Second Circuit caselaw and holding that letter sent to plaintiff by debt collector was not a communication "in connection in with the collection of a debt").

To the contrary, the letter informed plaintiff that Midland was closing the account relating to the Citibank debt and that there would be "no further collection activity or sale of this account." Dkt. #1, p. 7.

In short, Midland's letter, which was uploaded to the CFPB's online portal, merely responded to the complaint filed by plaintiff, and no consumer could reasonably have interpreted it to be part of a debt collection effort. *See Ervin v. Capital Mgmt. Servs. LP*, CIVIL ACTION NO. 1:22-cv-1848-MLB-CMS, 2023 WL 9051459, at *8 (N.D. Ga. Nov. 6, 2023) ("Considering the language, context, and timing of the CFPB Response, I find that the least-sophisticated consumer, reading the entire CFPB Response with care, would not conclude that the communication was an attempt to collect a debt.").

Therefore, the Court also concludes that plaintiff's FDCPA claim is untimely.

**Fair Credit Reporting Act**

Plaintiff alleges that defendants violated the FCRA by failing to conduct a reasonable investigation of the alleged debt, in violation of 15 U.S.C. § 1681s-2(b). Dkt. #1, ¶ 23.

The FCRA places certain duties on furnishers of information to consumer reporting agencies, including the duty to conduct an investigation with respect to disputed information. 15 U.S.C. § 1681s-2(b)(1)(A).

"No such duty arises, however, unless and until the furnisher receives a notice of a dispute between a consumer and credit reporting agency as to the

completeness or accuracy of information provided." *Owoyemi v. Credit Corp. Solns. Inc.*, 596 F. Supp.3d 514, 519 (S.D.N.Y. 2022) (citations omitted).

Here, plaintiff does not allege that he disputed his debt with any credit reporting agency or that defendants received notice of such a dispute and then failed to investigate it. To the contrary, he alleges that the disputed Citibank debt was never reported to credit reporting agencies. Dkt. #1, ¶¶ 13, 22.

Consequently, plaintiff fails to allege a viable FCRA claim. *Owoyemi*, 596 F. Supp.3d at 519 ("The Complaint does not allege that Owoyemi filed a dispute with a credit reporting agency, let alone that Credit Corp received notice of any such dispute from a credit reporting agency. The Complaint therefore fails to state a claim under 15 U.S.C. § 1681s-2(b).").

Therefore, plaintiff's FCRA must be dismissed.

**<u>State Law Claims</u>**

Because the Court dismisses plaintiff's federal claims at this early stage of the case, it declines to exercise its supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367. *Hakobyan*, 2023 WL 8473947, at *3 (declining to exercise supplemental jurisdiction over state law claims after dismissing FDCPA claim); *Durden*, 2023 WL 2482638, at *3 (similar); *Mohnkern*, 2021 WL 5239902, at *8 (similar).

## **CONCLUSION**

Consistent with this Decision and Order, defendants' motions to dismiss (Dkt. ##19, 35) are granted, and the remaining pending motions in this matter (Dkt. ## 4, 27, 28, 29, 30) are denied as moot.

**SO ORDERED.**

DATED:    Buffalo, New York
          September 25, 2025

                                             s/ H. Kenneth Schroeder, Jr.
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**